MCCORRISTON MILLER MUKAI MACKINNON LLP

DAVID J. MINKIN          # 3639-0
JESSICA M. WAN          #10183-0
JORDAN K. INAFUKU      #10392-0
PAGE C. K. OGATA        # 9562-0
Five Waterfront Plaza, 4th Floor
500 Ala Moana Boulevard
Honolulu, Hawaiʻi 96813
Telephone:  (808) 529-7300
Email:  *minkin@m4law.com; jwan@m4law.com;*
        *inafuku@m4law.com; pogata@m4law.com*

Attorneys for Defendants
ENCORE CAPITAL GROUP, INC.,
MIDLAND FUNDING, LLC, and
MIDLAND CREDIT MANAGEMENT, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARIVIC ALDAYA (f/k/a Marivic Amistoso), on behalf of herself and all others similarly situated,<br><br>              Plaintiff,<br><br>      vs.<br><br>ENCORE CAPITAL GROUP, INC., MIDLAND FUNDING, LLC, and MIDLAND CREDIT MANAGEMENT, INC.,<br><br>              Defendants. | CIVIL NO. 15-00284 SOM-RLP<br><br>DEFENDANTS' **REPLY MEMORANDUM** IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS, FILED ON JANUARY 4, 2017; CERTIFICATE OF COMPLIANCE; CERTIFICATE OF SERVICE<br><br>*[Related to Dkts. 52 & 66]*<br><br><u>**Hearing:**</u><br>Date:    February 27, 2017<br>Time:    9:45 a.m.<br>Judge:   The Hon. Susan Oki Mollway<br><br>Trial Date:  June 6, 2017<br>Judge:   The Hon. Susan Oki Mollway |

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................1

II.   LEGAL STANDARD...........................................................................3

III.  DISCUSSION .......................................................................................4

      A.    Plaintiff's Interest Rate-Related Claims (*i.e.*, Class Claims) Fail.........4

            1.    *Midland's right to charge interest was not waived at charge-off* ...................................................................................5

            2.    *The Complaint's factual allegations all relate to pre-judgment—not post-judgment—interest, and Midland was unquestionably allowed to apply such interest* ...................9

      B.    Plaintiff's Individual Claims Fail.......................................................15

IV.   CONCLUSION ...................................................................................17

i

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................3, 16

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)..........................................................................3, 4

*Bunce v. Portfolio Recovery Assocs.,*
    Civ. No. 14-2149-JTM, 2014 WL 5849252 (D. Kan. Nov. 12, 2014)..................6

*Coon v. City & Cnty. of Honolulu,*
    98 Hawaiʻi 233, 47 P.3d 348 (2002).....................................................5

*Diaz v. Kubler Corp.,*
    785 F.3d 1326 (9th Cir. 2015) ................................................. 2, 9, 10

*Frost v. Resurgent Capital Servs.,*
    Civ. No. 15-039087-EJD, 2016 WL 3479087 (N.D. Cal. June 27, 2016) 2, 7, 8, 9

*Hamilton v. State Farm Fire & Cas. Co.,*
    270 F.3d 778 (9th Cir. 2001) ..............................................................12

*In re Gilead Sciences Sec. Litig.,*
    536 F.3d 1049 (9th Cir. 2008) ...........................................................16

*Landover Corp. v. Bellvue Master LLC,*
    252 Fed. Appx. 800 (9th Cir. 2007)..................................................5, 6

*Roxas v. Marcos,*
    89 Hawaiʻi 91, 969 P.2d 1209 (1998)..................................................12

*Terech v. First Resolution Mgmt. Corp.,*
    854 F. Supp. 2d 537 (N.D. Ill. 2012) ....................................................7

*Walkabout v. Midland Funding LLC,*
    Civ. No. 14-939-M, 2016 WL 1169540 (W.D. Okla. Mar. 22, 2016) ..................7

353889.2

Statutes

Haw. Rev. Stat. § 478 ....................................................................................................3
Haw. Rev. Stat. § 478-2 ....................................................................................... passim
Haw. Rev. Stat. § 478-3 ....................................................................................... passim

Rules

Fed. R. Civ. P. 12(b)(6)..................................................................................................1
L.R. 7.5(b) ......................................................................................................................1

Other Authorities

Cal. Civ. Code 3289 .....................................................................................................10

**DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR JUDGMENT
ON THE PLEADINGS, FILED ON JANUARY 4, 2017**

## I.   **INTRODUCTION**

In their Motion for Judgment on the Pleadings ("Motion"), Midland

conclusively established that Plaintiff's theory in this case—that Midland

"unlawfully charged Plaintiff and the Class 'statutory interest' of 10% for the time

between the date of charge off and the filing of the collection lawsuit"—does not

and cannot state a claim for relief.  Specifically, Midland cited factually similar

cases and binding Ninth Circuit authority in support of their contention that the

motion should be granted because (i) Midland acquired the contractual right to

charge interest on Plaintiff's credit card account from HSBC Bank Nevada, N.A.

("HSBC"), which never waived its right to charge interest; and (ii) even if HSBC

did waive its right to charge interest, Midland were entitled to assess prejudgment

interest at 10% per year pursuant to HRS Section 478-2.

In response, Plaintiff attempts a wholesale change of the principal theory she

asserted in her First Amended Complaint ("Complaint"); relies on a slew of out-of-

circuit case law; and attempts to pervert the pleading standards under the Supreme

Court's *Iqbal* and *Twombly* decisions such that contradictory, conclusory, and

implausible allegations are sufficient to state a claim under FRCP Rule 12(b)(6).

1

As detailed below, however, none of Plaintiff's contentions are sufficient to save the Complaint here.

*First*, Plaintiff's contention that her Complaint establishes that HSBC voluntarily relinquished (*i.e.*, waived) its right to collect interest when it charged off Plaintiff's debt is without merit.  Indeed, Plaintiff can only muster two out-of-circuit, non-binding, district court cases in support of this contention.  Other courts, however, including one district court in the ***Ninth Circuit*** have addressed allegations similar to those in this case, and have determined that they are not sufficient to constitute waiver.  *See, e.g., Frost v. Resurgent Capital Servs.*, Civ. No. 15-039087-EJD, 2016 WL 3479087, at *4 (N.D. Cal. June 27, 2016).

*Second*, Plaintiff's contention that Midland were not allowed to apply interest at the statutory rate of 10% is foreclosed by binding Ninth Circuit precedent.  *See Diaz v. Kubler Corp.*, 785 F.3d 1326 (9th Cir. 2015) (holding that a debt collector does not violate the FDCPA, or related state law, if it seeks pre-judgment interest authorized by state statute).  Recognizing the devastating effect of *Diaz* on her claims, Plaintiff's opposition goes to great lengths in an attempt to distance the Complaint from *Diaz*.  Her efforts are unsuccessful.

The theory of Plaintiff's Complaint is now, and has always been, that Midland improperly charged statutory pre-judgment interest at a rate of 10%.  *See* Dkt. No. 33 ¶ 29 (Midland had a "routine practice of imposing ***pre-judgment***

2

*interest* at a rate of 10% pursuant to Haw. Rev. Stat. § 478 3 [sic].”); *id.* ¶ 31

(Midland charged Plaintiff and the Class “‘statutory interest’ of 10% for the time

between the date of charge off and the filing of the collection lawsuit.”).  In her

opposition, however, Plaintiff attempts, *inter alia*, to convince this Court that the

Complaint relates to ***post-judgment interest*** and that Midland were somehow

applying random, inconsistent rates of interest to Plaintiff’s account.  As detailed

below, not only do these contentions contradict the plain language of the

Complaint, they are demonstrably implausible and, accordingly, insufficient to

state a claim.

      In sum, Midland’s Motion should be granted in its entirety.

## II.  <u>LEGAL STANDARD</u>

      Plaintiff argues at length that the legal standard applicable to Midland’s

Motion is so permissive that even their facially deficient allegations suffice to state

a claim.  Not so.  As this Court is aware, the pleading standard in federal court is

well-settled:  the Complaint “must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face.”  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  A claim only has facial plausibility if the plaintiff pleads ***factual content***

that allows the court to draw a “reasonable inference” that the defendant is liable.

*Id.* (citing *Twombly*, 550 U.S. at 556).  The Court must take all factual allegations

as true, but is "not bound to accept . . . a legal conclusion couched as a factual allegation," or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (citing *Twombly*, 550 U.S. at 555).

As detailed more fully below, the Complaint affirmatively alleges facts showing that HSBC did not waive its right to collect interest. Moreover, it explicitly alleges that Midland applied a 10% interest rate pursuant to Hawai'i law. *See, e.g.*, Dkt. No. 33 ¶¶ 29; 31. If these facts are taken as true—as they must be at this stage—the law dictates that the Motion be granted.

## III.   DISCUSSION

### A.   Plaintiff's Interest Rate-Related Claims (*i.e.*, Class Claims) Fail

Plaintiff alleges that Midland violated the FDCPA and HRS by "unlawfully charg[ing] Plaintiff and Class members interest not due and owing, and not authorized by contract." *Id.* 33 ¶¶ 55 (pertaining to Count I), 73 (pertaining to Count II). In support, the Complaint alleges, *inter alia*, that:

- "HSBC 'charged off' the debts of Plaintiff and the class before selling the debts to [Midland]," *id.* ¶ 25;

- by "charging off the its [sic] loans, HSBC waived its contractual right to collect interest from Plaintiff and the class," id. ¶ 26;

- Midland sent Plaintiff class collection letters that assert "that the interest rate on the account is 10.00%, and that the account has accrued . . . interest," *id.* ¶ 23;

- Midland had a "routine practice of imposing pre-judgment interest at a rate of 10% pursuant to Haw. Rev. Stat. § 478-3 [sic]," *id.* ¶ 29; and

4

- Midland charged Plaintiff and the Class "'statutory interest' of 10% for the time between the date of charge off and the filing of the collection lawsuit, *id.* ¶ 31.

Taking the facts as true, Plaintiff fails as a matter of law to properly plead that "waiver" resulted in Midland not having the right to charge interest. Moreover, the Complaint never establishes why charging 10% interest pursuant to Hawai'i law—even if true—violated the FDCPA and/or HRS. For these reasons, Plaintiff's interest rate-related claims (*i.e.*, those that she is attempting to assert on behalf of the putative class of consumers) cannot survive.

1. *Midland's right to charge interest was not waived at charge-off*

The underlying and necessary premise supporting Plaintiff's theory that the right to charge interest was "waived," is that HSBC (the original creditor on Plaintiff's account), waived the right to charge interest when it charged-off Plaintiff's debt. *Id.* ¶ 26 ("HSBC waived its contractual right to collect interest from Plaintiff and the class."). This premise is wrong as a matter of law, a fact that nothing in Plaintiff's opposition can change.

Waiver is a <u>voluntary</u> and intentional relinquishment of a known right, which may <u>only</u> result from unequivocal acts or conduct demonstrating the party's intent to waive. *See Coon v. City & Cnty. of Honolulu*, 98 Hawai'i 233, 261, 47 P.3d 348, 376 (2002); *Landover Corp. v. Bellvue Master LLC*, 252 Fed. Appx. 800, 803 (9th Cir. 2007). The Court should not "infer waiver from ambiguous factors,"

5

as the Plaintiff asks the Court to do here.  *See Landover*, 252 Fed. Appx. at 803.

Instead, the Court must analyze whether Plaintiff has alleged sufficient facts to

allow it to reasonably infer waiver.

The Complaint, however, contains no allegations that indicate that HSBC

was committing a voluntary act when it charged off Plaintiff's unpaid debt.  In

fact, the Complaint admits exactly the opposite.  Specifically, the Complaint

alleges that that "federal banking regulations" *required* HSBC to charge off

Plaintiff's debt within a certain time after Plaintiff refused to pay.  *See* ¶ 107 (

"[u]nder federal banking regulations, a credit card debt *must be charged off* when

it is 180 days overdue (it may be charged off earlier)" (emphasis added).  Taking

this allegation as true—as the Court must here—it is clear that when HSBC

charged off Plaintiff's debt, it was not making a "voluntary" or "intentional"

decision to waive the right to charge interest.  *See Bunce v. Portfolio Recovery*

*Assocs.*, Civ. No. 14-2149-JTM, 2014 WL 5849252, at *2 (D. Kan. Nov. 12, 2014)

(finding allegations that the original creditor charged-off the account were not

sufficient to establish waiver).[1]

---

[1]  Even if the Court finds that HSBC intentionally charged off plaintiff's debt, *Bunce* makes clear that such an act does not automatically constitute "waiver" under the law.  Instead, courts require detailed factual allegations showing that the original creditor intended to "waive" its right to interest.  Here, the Complaint comes nowhere close to providing such detail.  In short, Plaintiff's attempt to equate "charge off" with "waiver," ignores the pleading standard, and should be rejected.

6

In an attempt to counter this clear logic, Plaintiff repeatedly cites two out-of-circuit district court cases that are easily distinguishable.  In *Walkabout v. Midland Funding LLC*, Civ. No. 14-939-M, 2016 WL 1169540 (W.D. Okla. Mar. 22, 2016) and *Terech v. First Resolution Mgmt. Corp.*, 854 F. Supp. 2d 537 (N.D. Ill. 2012), the respective district courts found that a series of specific and detailed factual allegations may allow the court to infer a waiver of interest.  The allegations included that (1) the original creditor charged-off the debt; (2) the amount for which the debt sold was the same amount for which it was charged-off; and (3) for valid "business reasons," the original creditor ***intentionally chose*** to stop adding interest.  *Walkabout*, 2016 WL 1169540 at *4; *Terech*, 854 F. Supp. 2d at 542.

Here, the Complaint does not contain such specific and detailed factual allegations.  Plaintiff alleges only that "HSBC 'charged off' the debts of Plaintiff and the class," and that "[b]y choosing to receive the tax benefits of charging off the its [sic] loans, HSBC waived its contractual right to interest under the credit card agreement."  *Id.* ¶¶ 25-26.

Even under *Walkabout* and *Terech*, these allegations are insufficient to support a finding of waiver.  In fact, one district court ***in the Ninth Circuit*** has addressed similar allegations and has determined that an original creditor's "business decision" not to apply interest after charge off is insufficient for waiver.  *See Frost v. Resurgent Capital Servs.*, Civ. No. 15-039087-EJD, 2016 WL

7

3479087, at *4 (N.D. Cal. June 27, 2016) (finding that the "regular business practice of not collecting post-charge off interest" is not enough because it "require[s] the court to make unsupported inferences," including that the business practice was applied to that specific debt). Indeed, to properly establish that the original creditor applied its general business practice to the plaintiff, the complaint must allege "conversations or exchange[s] of documents between [the original creditor and the plaintiff] in which [the original creditor] evinced its intent to forego collecting interest on [the] debt on or after charge-off." *Id.* Here, the Complaint does not allege specific facts as required by law.

Plaintiff attempts to rescue her waiver argument by pointing to allegations that appear in the section of the Complaint entitled "Plaintiff's Individual Causes of Action," to wit, paragraphs 110, 114, and 115. This is improper, however, as the Complaint explicitly limits the factual allegations in support of the Class Claims to paragraphs 1-42. Accordingly, these allegations should be ignored for purposes of assessing the Class Claims.[2]

---

[2] Plaintiff has already had one opportunity to amend her Complaint. Following its original filing on July 28, 2015, Plaintiff was given leave to file this First Amended Complaint almost one year later. Dkt. No. 42 in Civ. No. 15-00280 SOM-RLP. Plaintiff has since filed a Motion for Leave to Amend to Conform to the Evidence—a second attempt, six months later, to amend the First Amended Complaint. Even in the proposed Second Amended Complaint, the factual allegations in paragraphs 107 through 127 remain in the section for Individual Claims and are still not incorporated into either of the Class Claims.

8

Even if the Court excuses Plaintiff's improper citation to paragraphs 110, 114, and 115, these paragraphs do not rescue Plaintiff's waiver argument. Paragraphs 110, 114, and 115 add that HSBC did not apply interest after charge-off for business purposes; that HSBC could change the terms of the credit card agreement to waive interest; and that HSBC waives interest after charge-off as a standard practice. *Id.* ¶¶ 110, 114, 115; *see* Dkt. No. 67 at 9-10. As detailed above, however, such "business practice" allegations do not resurrect Plaintiff's waiver claim. *See Frost*, 2016 WL 3479087, at *4.

> 2. *The Complaint's factual allegations all relate to pre-judgment—not post-judgment—interest, and Midland was unquestionably allowed to apply such interest*

Even if the Court finds that the Complaint pleads sufficient facts to establish "waiver," judgment on the pleadings as to the interest rate-related claims is appropriate because the Complaint accuses Midland of doing something completely legal: charging statutory pre-judgment interest at a rate of 10%. *See* Complaint at ¶ 29 (Midland had a "routine practice of imposing pre-judgment interest at a rate of 10% pursuant to Haw. Rev. Stat. § 478-3 [sic]."); *id.* ¶ 31 (Midland charged Plaintiff and the Class "'statutory interest' of 10% for the time between the date of charge off and the filing of the collection lawsuit."). Accordingly, the Class Claims must be dismissed.

9

The Ninth Circuit held in *Diaz* that a debt collector does not violate

the FDCPA, or related state law, if it seeks pre-judgment interest authorized by

state statute. *Diaz*, 785 F.3d at 1330-31 (analyzing Cal. Civ. Code 3289, a

provision nearly identical to HRS 478-2). The court held that a debt collector need

not wait for a judgment to apply interest; rather "a judgment awarding interest . . .

merely vindicates a preexisting right to interest instead of creating it." *Id.* at

1330.

Here, the Complaint alleges that Midland applied pre-judgment interest to

Plaintiff's account at the statutorily prescribed rate of 10%. *See* Dkt. No. 33 ¶¶ 29,

31. Accordingly, given that the Hawai'i statute regarding pre-judgment interest—

HRS Section 478-2—is nearly identical to the California statute in *Diaz*, Plaintiff's

claims regarding pre-judgment interest fail. *See* Dkt. No. 52 at 12.

In an effort to avoid the preclusive effect of *Diaz*, Plaintiff makes two main

contentions, both of which are without merit.

> a. The Complaint asserts—and always has asserted—that Midland
>    applied *pre-judgment* interest at 10%

Plaintiff first contends that the Complaint should be spared from *Diaz*

because it alleges that Midland violated HRS Section ***478-3***, which governs the

statutory interest rate on ***judgments***. Given the Complaint's plain language,

however, this contention is, at best, disingenuous. In fact, the Complaint refers to

the application of "***pre***-judgment interest" no fewer than ***six*** times. *See, e.g.*,

10

Dkt. No. 33 ¶ 29 ("Defendants' routine practice of imposing pre-judgment interest"); *id.* ¶¶ 30, 56, 74 (referencing case law on pre-judgment interest); *id.* ¶ 40 ("Defendants use form collection letters that each charge pre-judgment interest"); *id.* ¶ 71 ("based on the Hawai'i pre-judgment interest rate").  This makes sense given that the facts here relate to a series of letters that the Plaintiff received ***prior to Midland initiating any legal action against Plaintiff***.  *See id.* ¶ 2.  Indeed, the Complaint's lone reference to HRS Section 478-3 is in paragraph 29, following a description of "pre-judgment interest."  *Id.* ¶ 29 (describing "Defendants' routine practice of imposing ***pre-judgment interest*** at a rate of 10% pursuant to Haw. Rev. Stat. § 478-3") (emphasis added).  Not surprisingly, the Complaint never mentions "post-judgment interest."

The above makes apparent that the most plausible scenario is that the Complaint's reference to HRS Section 478-3 was the result of either counsel's misunderstanding of the Hawai'i interest rate statutes, or a simple typographical error.  It is ***not*** a factual allegation that allows the Plaintiff to avoid *Diaz*.

Plaintiff's argument is further undermined when it is considered in light of Plaintiff's recently filed Motion for Leave to Amend ("Motion for Leave").  *See* Dkt. No. 60.  In the Motion for Leave, Plaintiff contends, among other things, that there is "good cause" for allowing Plaintiff to submit a Second Amended Complaint.  One of the changes that Plaintiff proposes is omitting the reference to

11

HRS Section 478-3, and ***replacing it with a reference to HRS Section 478-2***. *Id.* at 1-2 (asserting that there is good cause "to change the Hawai'i statute citation from Section 478-3 to Section 478-2"). In other words, even though Plaintiff clearly recognizes and has represented to the Court in a pending motion that HRS Section 478-2 ***does*** apply, Plaintiff is inexplicably attempting to contend here that the Motion should not be granted because HRS Section 478-2 ***does not*** apply. Plaintiff cannot have it both ways.[3]

Additionally, Plaintiff admits in her Motion for Leave that she "was not ever sued by [Midland] on the HSBC Bank Nevada consumer credit account ending in 4087 the forms the underlying basis of this case[.]" Dkt. No. 60 at 3-4. Such an admission makes it even more implausible that the proper statute is HRS Section 478-3. Indeed, it is not, and Plaintiff has admitted it.

The Complaint's plain language and counsel's recent representations make clear that this case is about pre-judgment interest under HRS Section 478-2, not post-judgment interest under HRS Section 478-3. Accordingly, *Diaz* applies and Midland's Motion should be granted as a matter of law. Notably, Plaintiff

---

[3] "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001); *Roxas v. Marcos*, 89 Hawai'i 91, 124, 969 P.2d 1209, 1242 (1998). Given that Plaintiff's Motion for Leave concedes that HRS Section 478-3 is the incorrect statute, she may not now assert that it is the applicable statute to survive her deficient pleading.

12

353889.2

concedes as much.  *See* Dkt. No. 67 at 19 (contending that *Diaz* would be applicable if "the Complaint [] allege[d] that 10% interest was calculated pursuant to Haw. Rev. Stat. § *478-2*") (emphasis added).

> b.   The contention that Midland were applying interest at random, varying rates, is inconsistent with the Complaint's allegation and completely implausible

Next, Plaintiff attempts to contend that "the rate of interest actually charged was something other than 10%." *See* Dkt. No. 67 at 20.  This attempt to change the theory of the Complaint in the middle of litigation is meritless.

As an additional matter, the notion that Midland applied a rate of interest "other than 10%" wholly contradicts numerous other allegations in the Complaint. In fact, in no fewer than *six* instances, the Complaint's allegations—which must be accepted as true—contend that Midland applied a 10% interest rate to her unpaid debt.  *See, e.g.*, Dkt. No. 33 ¶¶ 23, 24, 29, 31, 53, 71.  Additionally, the May 15, 2015 letter that Plaintiff attaches to the Complaint as an exhibit asserts that an interest rate of 10% applied to the account.[4]  Plaintiff cannot contend both that Midland was applying a rate of 10% *and* that the rate varied, changed, or was inconsistent.

---

[4] The various collection letters cited by Plaintiff show that, at some point in late 2014, Midland stopped applying interest to the account.  In other words, from late 2014 forward, the balances in Plaintiff's letters are all identical - $1,439.39. Dkt. No. 33, Exh. "1"-"5."

Moreover, even if Plaintiff's theory that there were varying rates of interest being applied could somehow be squared with the other allegations in the Complaint, it fails for numerous reasons. *First*, the allegations upon which Plaintiff relies in support of this position appear only in paragraphs 123 and 124 of the Complaint. As explained above, these allegations are not—nor could they be, given how particular they are to Plaintiff's individual letters—incorporated into the section of the Complaint related to the Class Claims and should therefore be ignored when evaluating the Class Claims. *Second*, as explained in Midland's memorandum in support of their Motion, these allegations are the result of Plaintiff's counsel's unknown mathematical calculations, and are not "factual allegations" that the Court must accept as true. Indeed, although Plaintiff's counsel apparently based the varying interest calculations on "the time passed and the amounts demanded," counsel did not explain why those are the correct inputs or refer to any other facts. Such a haphazard attempt to determine the interest rate is not sufficient to state a claim.

*Finally*, and perhaps most importantly, the contention that there were varying interest rates is simply implausible. Plaintiff's theory would require the Court to infer that Midland periodically, and haphazardly, modified the interest rate applicable to Plaintiff's account (and the accounts of the putative Class) to random rates such as 9.029%, 7.021%, 7.685%, 5.463%, 1.639%. Dkt. No. 33 ¶

123.  Plaintiff provides no explanation whatsoever why Midland—or any company—would engage in such a resource-intensive (and unnecessarily complicated) exercise.  It is far more plausible that Midland—as alleged in other paragraphs—applied a constant 10% rate of interest to the accounts.

Certain allegations further demonstrate how far-fetched this theory is.  For example, the Complaint alleges that Midland applied an interest rate of 10% "at charge off," *id.* ¶ 31 – *i.e.*, sometime prior to August 2013 – and then a 10% interest rate on May 15, 2015.  *Id.* ¶¶ 23, 53, 71, Exhibit "1."  In order to credit Plaintiff's "varying rates of interest" argument, the Court would have to infer that Midland started charging interest at the statutory rate, but then began assigning random rates of interest to the account for roughly a year and a half, and finally returned to the 10% statutory rate in May 2015.  It simply makes no sense.

In sum, Plaintiff fails to state its Class Claims such that relief may be granted.  Judgment on the pleadings is warranted on Count I and Count II.

## B.  **Plaintiff's Individual Claims Fail**

Count III alleges Plaintiff's individual claims against Midland for violations of the FDCPA, which include similar interest-related allegations as the Class Claims.  *Id.* ¶ 134.  To the extent that Count III is dependent on interest-related allegations, the arguments in Section III.A of this reply memorandum address why judgment on the pleadings is warranted.

15

Count IV (incorrectly labeled as "COUNT TWO" in the Complaint) further alleges violations based on Midland's purported application of fees.  Plaintiff brings these claims, however, without pleading any "factual content that allows the court to draw the reasonable inference" that fees were improperly applied.  *See Iqbal*, 556 U.S. at 678.  The factual basis of her fee-related claims is as follows: Plaintiff received "letters from Defendants" that "demanded unfamiliar and inconsistent rates of interest and/or fees," as evidenced by how the "amounts demanded by Defendants increased drastically from $546 to $600 charged-off by HSBC to the $1,439.39 demanded on January 29, 2015[.]"  Dkt. No. 33 ¶ 148-149.  Plaintiff argues that this is a factual dispute that precludes judgment on the pleadings, but she is incorrect.

The Court need not accept as true factual allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  It may also disregard factual allegations "that contradict matters properly subject to judicial notice or by exhibit."  *Id.*  Here, Plaintiff's exhibits directly contradict her factual allegations concerning purported interest and/or fees.

Plaintiff's Exhibit "6" shows that the amount at charge-off was ***not*** $546 or $600.  *See* Dkt. No. 33-6.  Plaintiff has misread the exhibit, which shows a separate debt to HSBC (the account number for which has been redacted) that was

16

charged-off at $546.  Information on the account at issue—Midland account number 8538045269—is located on page 4 of Exhibit 6 and shows a "High Credit" of $1,027.  This is consistent with Plaintiff's Exhibit 1, which states the principal balance of $1,026.59, an interest rate of 10.00%, an accrued interest of $412.80, and a total balance of $1,439.39.  *See* Dkt. No. 33-1.  Thus, Plaintiff's own Exhibits "1" and "6" directly contradict her only factual allegation in support of the fees claim.  Absent those alleged "facts," which the Court must ***not*** accept as true, Count IV (as it relates to fees) is merely "a formulaic recitation of the elements" and is insufficient to state a claim under the HRS.  Accordingly, judgment on the pleadings is warranted.

With respect to the remaining Individual Claims, Midland incorporates the arguments in the memorandum in support of their Motion.

## IV.   CONCLUSION

For the foregoing reasons, Midland respectfully requests that this Court enter judgment on the pleadings on both the Class Claims and the Individual Claims.  Alternatively, Midland requests that the Class Claims be dismissed for failure to state a claim.  If the Court dismisses each of Plaintiff's federal claims, Midland requests that the Court decline to exercise supplemental jurisdiction over any remaining state law claims.

353889.2

DATED:  Honolulu, Hawaiʻi, February 13, 2017.

/s/ DAVID J. MINKIN
DAVID J. MINKIN
JESSICA M. WAN
JORDAN K. INAFUKU
PAGE C. K. OGATA

Attorneys for Defendants
ENCORE CAPITAL GROUP, INC.,
MIDLAND FUNDING, LLC, and
MIDLAND CREDIT MANAGEMENT, INC.

18

353889.2