IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARIVIC ALDAYA (fka Marivic Amistoso), et al., | ) ) | CIVIL NO. 15-00284 SOM/RLP |
| | ) | ORDER GRANTING IN PART AND |
| Plaintiff, | ) | DENYING IN PART DEFENDANTS' |
| | ) | MOTION FOR JUDGMENT ON THE |
| vs. | ) | PLEADINGS |
| | ) | |
| ENCORE CAPITAL GROUP, INC.; | ) | |
| MIDLAND FUNDING, LLC; and | ) | |
| MIDLAND CREDIT MANAGEMENT, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

I.        **INTRODUCTION.**

        This putative class action asserts violations of the

Fair Debt Collection Practices Act and Hawaii's consumer

protection laws arising out of credit card debt sold to debt

collectors.  Defendants seek judgment on the pleadings pursuant

to Rule 12(c) of the Federal Rules of Civil Procedure.  The court

grants Defendants' motion with respect to Plaintiff's claim based

on allegedly confusing account numbers, as well as with respect

to a claim Plaintiff offered to withdraw (i.e., the claim arising

out of Defendants' alleged failure to pay Hawaii's general excise

taxes).  The court denies the remainder of the motion.

II.        **BACKGROUND.**

        On July 22, 2016, Plaintiff Marivic Aldaya filed a

First Amended Class Action Complaint denominated as a class

action.  The First Amended Complaint asserts claims under the Fair Debt Collection Practices Act, Hawaii's statutory prohibition against unfair or deceptive acts or practices, and Hawaii's statutory prohibition against the use by collection agencies of fraudulent, deceptive, or misleading misrepresentations, or unfair or unconscionable means of collecting or attempting to collect debts.  See ECF No. 33.

This case arises out of a credit card debt incurred for personal, family, or household use that Aldaya originally owed HSBC Bank Nevada, N.A.  *See* First Amended Complaint ¶¶ 12, 18, ECF No. 33, PageID # 272-73.  The First Amended Complaint's allegations concerning the credit card debt are minimal.  No credit card agreement is attached to or described in the First Amended Complaint.  Nor is the exact amount of the alleged debt clearly established in it.

This court takes judicial notice of Aldaya's Equifax credit report, attached as Exhibit 6 to the First Amended Complaint, which shows that Aldaya had a $600 credit limit with HSBC.  *See* ECF No. 33-6, PageID # 325.  According to the same report, Aldaya first failed to make payments on her account in February 2010.  *Id.*, PageID 326.  The credit report indicates that HSBC eventually "charged off" $546 of debt.  *Id.*  The First Amended Complaint alleges that either $546 or $600 "was the

amount of the alleged debt sold by HSBC." ECF No. 33, PageID # 294.

According to Paragraph 107 of the First Amended Complaint, federal regulations require a "charge off" when a debt is 180 days overdue. *Id.* According to Equifax's glossary of terms, a "charge off" is an

> [a]ccounting term to indicate the creditor does not expect to collect a balance owing and chooses to transfer the account to an accounting category such as "bad debt" or "charged to loss". These accounts are usually turned over to collection agencies. This is the most adverse status reported on accounts.

https://help.equifax.com/app/answers/detail/a_id/398/~/glossary-of-credit-terms (last visited February 21, 2017). Aldaya alleges that her debt was "charged off" in March 2011. ECF No. 33 ¶ 109, PageID # 294.

Aldaya says her charged off credit card debt was at some point "assigned" to Defendants Midland Funding, LLC, and Midland Credit Management, Inc. *See* First Amended Complaint ¶¶ 13, 17, ECF No. 33, PageID # 272. Midland Funding is allegedly Defendant Encore Capital Group, Inc.'s wholly owned subsidiary. *Id.* ¶ 9, PageID # 271. The First Amended Complaint has no allegations concerning whether the Midland entities are registered with the State of Hawaii as debt collectors, but Aldaya conceded at the hearing on the present motion that they are so registered. Aldaya represented, however, that the parent company, Encore, is not so registered. Whether any company is

registered as a debt collector is not relevant to the present motion. Aldaya says that neither of the Midland entities pays general excise taxes in Hawaii. *See* ECF No. 33 ¶¶ 182-84, PageID #s 308-09.

The Equifax credit report attached to the First Amended Complaint shows that Aldaya owed the following balances on her account:

| August 2013 | $1,304 |
| September 2013 | $1,314 |
| December 2013 | $1,337 |
| January 2014 | $1,345 |
| February 2014 | $1,357 |
| March 2014 | $1,365 |
| May 2014 | $1,383 |
| June 2014 | $1,388 |
| August 2014 | $1,406 |
| October 2014 | $1,424 |
| December 2014 | $1,437 |
| January 2015 | $1,439 |
| February 2015 | $1,439 |
| March 2015 | $1,439 |
| April 2015 | $1,439 |
| May 2015 | $1,439 |

ECF No. 33-6, PageID #s 327-29. The uneven monthly totals suggest that a variable interest rate might have been assessed. There is no explanation as to how Aldaya's debt went from the

4

charge off amount of $546 in November 2010 to $1,304 in August 2013, which appears to be when Midland first reported to Equifax that Aldaya owed it money.  At most, the letter of May 15, 2015, indicates a "Previous Balance" of $1,026.59 with "Accrued Interest" of $412.80, for a total of $1,439.39.  ECF No. 33-1, PageID # 315.

The record does not contain allegations concerning Midland's initial communication with Aldaya or allege that Aldaya failed to receive the validation disclosures required by the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g(a).

### A.    Letter Dated January 29, 2015.

The earliest communication attached to the First Amended Complaint is a letter from Midland Credit Management, Inc., to Aldaya dated January 29, 2015.  *See* ECF No. 33-2, PageID #s 316-17.  In its top right corner, this letter prominently identifies the original creditor as HSBC and list**s** the original HSBC account number, redacted in the exhibit to include only the last four digits, 4087.  *Id.* PageID # 316.  There is no dispute that the original copy of this letter that Aldaya received (and all other letters attached to the First Amended Complaint) listed the complete original HSBC account number.

The letter noted a new Midland Credit Management account number of 8538045269.  *Id.*  The letter stated that the balance owed was $1,439.39, but that Aldaya could pay off the

loan for $863.63, in which event Midland would report that the
account was "Paid in Full for less than the full balance." *Id.*
The letter indicated that it was a communication from a debt
collector and that any information obtained would be used to
collect the debt. *Id.*, PageID 317. It then listed various state
rights, most applicable to people living in states other than
Hawaii. *Id.*

A very similar letter was sent to Aldaya by Midland
Credit Management in March 2015. *See* ECF No. 33-3, PageID
#s 318-19.

**B.    Letter Dated April 27, 2015.**

In a letter to Aldaya dated April 27, 2015, Midland
Credit Management, Inc., explained that Midland Funding LLC owned
the balance of $1,439.39 that Aldaya had allegedly owed to HSBC.
ECF No. 33-4, PageID # 320. The letter acknowledged that Aldaya
was disputing her debt and asked Aldaya's help to reach a quick
resolution. *Id.* Like the January and March 2015 letters, the
April 2015 letter prominently included Aldaya's original HSBC
account number in its upper right corner. *Id.*

The April 2015 letter appears to have been a response
to Aldaya's assertion that the Midland entities' records were
inaccurate:

> We understand that you are disputing the
> accuracy of our records concerning the above
> referenced account. After reviewing the
> information you provided, as well as our

>       account notes, and information provided by
>       the previous creditor, we are unable to
>       determine the nature of your dispute, and
>       consequently deny that our records are
>       inaccurate.
>
>       If you still believe the account information
>       is inaccurate, please provide an explanation
>       of why you believe it is inaccurate along
>       with any documentation you have supporting
>       this explanation.  Upon receipt of this new
>       information we will be happy to reinvestigate
>       our records.

*Id.*

An almost identical letter was sent to Aldaya on June 16, 2015.  *See* ECF No. 33-5, PageID #s 322-23.

### C.  **Letter dated May 15, 2015.**

In a letter dated May 15, 2015, Midland Credit Management, Inc., stated that Aldaya's current balance on the account was $1,439.39, that her original creditor was HSBC, and that the current owner of the debt was Midland Funding LLC.  ECF No. 33-1, PageID # 314.  Unlike the four previous letters, the May 2015 letter listed the original account number in a smaller font in the Payment Certificate at the bottom of its first page and in the Additional Account Information section at the bottom of its second page.  *Id.*  The Additional Account Information section noted that interest of 10% was being charged and that the debt included "accrued interest" of $412.80.  *Id.*, PageID # 315. The letter told Aldaya that Midland Credit Management had made several attempts to contact her and that it was considering

forwarding her account to an attorney for collection. It asked Aldaya to call (800) 939-2353 to discuss her options. *Id.*, PageID # 314. To stop the process, Aldaya was to "Mail in $250 and call to set up your remaining payments." *Id.* The letter included the following statement, "Please understand this is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose." *Id.*, PageID # 315. It also stated, "This may be your last chance to work with us before the account goes to an attorney." *Id.*, PageID # 314.

Aldaya says the 10% interest rate referred to in the letter of May 15, 2015, is false and that the interest rate on her HSBC credit card account was never 10%. First Amended Complaint ¶ 24, PageID # 273.

Aldaya alleges, "When a lender charges off a debt[,] it ceases to charge interest because doing so would require it to expend additional funds by continuing to calculate, service, and send monthly statements." *Id.* ¶ 25, PageID # 274. Aldaya then alleges that HSBC, by choosing to receive the tax benefits of charging off its loans, waived its contractual right to collect interest on charged off accounts such as hers *Id.* ¶ 26, PageID # 274. The legal or factual basis for these allegations is not stated.

According to Aldaya, because HSBC charged off her
account, allegedly waiving any right to further interest under
the credit card agreement, any Midland entity that purchased the
debt was barred from charging any interest.  *Id.* ¶ 27, PageID
# 274.  Aldaya alleges that Midland made a practice of sending
form collection letters listing prejudgment interest of 10% per
annum pursuant to section 478-2 of Hawaii Revised Statutes.  *Id.*
¶ 29, PageID # 274.

## III.    JUDGMENT ON THE PLEADINGS STANDARD.

Rule 12(c) states, "After the pleadings are closed--but
early enough not to delay trial--a party may move for judgment on
the pleadings."  The standard governing a Rule 12(c) motion for
judgment on the pleadings is "substantially identical" to that
governing a Rule 12(b)(6) motion.  Under either, this court must
determine whether the facts alleged in the complaint, taken as
true, entitle the plaintiff to a legal remedy.  *Pit River Tribe
v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1155 (9th Cir. 2015);
*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637
F.3d 1047, 1054 n.4 (9th Cir. 2011) (stating standard is
"functionally identical").

For a Rule 12(c) motion, the allegations of the
nonmoving party are accepted as true, while the allegations of
the moving party that have been denied by the nonmoving party are
assumed to be false.  *See Hal Roach Studios v. Richard Feiner &*

*Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). A court evaluating a Rule 12(c) motion must construe factual allegations in a complaint in the light most favorable to the nonmoving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Under Rule 12(c), "Judgment on the pleadings is properly granted when, accepting all factual allegations as true, there is no material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Fleming*, 581 F.3d at 925); *accord Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*, 644 F.3d 934, 937 n.1 (9th Cir. 2011).

Generally, when matters outside the pleadings are considered, a motion for judgment on the pleadings must be considered as being one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(d). Courts have held, however, that, when adjudicating a Rule 12(c) motion, courts may consider matters subject to judicial notice without converting the motion to one for summary judgment. *See Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) ("When considering a motion for judgment on the pleadings, this court may consider facts that are contained in materials of which the court may take judicial notice." (quotations omitted)); *accord Lacondeguy v. Adapa*, 2011 WL 9572,

*2 (E.D. Cal. Jan. 3, 2011); *Williams v. City of Antioch*, 2010 WL 3632199, *2 (N.D. Cal. Sept. 2, 2010).

IV.     **ANALYSIS.**

        **A.    Interest Rates.**

        Defendants seek judgment on the pleadings to the extent the First Amended Complaint is based on a claim that the interest rate the Midland entities applied was false.  Defendants argue that state law authorized them to charge the interest imposed on Aldaya's debt, that they cannot be said to have charged varying rates of interest, and that HSBC did not waive its right to charge interest when it charged off the debt.  Defendants' arguments assume facts neither alleged by Aldaya nor subject to judicial notice.  On the present motion for judgment on the pleadings, this court does not make the assumptions Defendants urge and denies this part of the motion.

        In relevant part, the Fair Debt Collection Practices Act prohibits debt collectors from using false, deceptive, or misleading representations in connection with the collection of any debt, listing the following as violations of that prohibition: "(2) The false representation of--(A) the character, amount, or legal status of any debt; or . . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt . . . ."  15 U.S.C. § 1692e.  The Fair Debt Collection Practices Act also prohibits debt collectors from

using unfair or unconscionable means to collect or attempt to collect a debt, stating that that prohibition is violated by the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

Hawaii law similarly prohibits a collection agency from using fraudulent, deceptive, or misleading representations or means to collect or attempt to collect debts, including false representations as to the character, extent, or amount of a claim against a debtor. *See* Haw. Rev. Stat. § 443B-18(5). Hawaii law also prohibits collection agencies from using unfair or unconscionable means to collect or attempt to collect a claim against a debtor, including the collection or attempt to collect interest, charges, fees, or expenses unless expressly authorized by the agreement creating the obligation or by law. *See* Haw. Rev. Stat. § 443B-19.

Section 443B-20 of Hawaii Revised Statutes states that a collection agency's violation of Chapter 443B of Hawaii Revised Statutes "shall constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce for the purpose of section 480-2."

Defendants first argue that, because they had a contractual right to charge 10% prejudgment interest, they did

not charge an improper interest rate.  Defendants say that they acquired this contractual right from HSBC.  *See* ECF No. 52-1, PageID # 554.  However, Aldaya's credit card agreement with HSBC is not part of the record, and this court must view the facts in the light most favorable to the nonmoving party with respect to this motion for judgment on the pleadings.  This court cannot assume that Defendants are correct in asserting a contractual right to charge 10% prejudgment interest.

This court is similarly unpersuaded by Defendants' argument that they are entitled to charge prejudgment interest of 10% per year pursuant to section 478-2 of Hawaii Revised Statutes.  Section 478-2 states: "When there is no express written contract fixing a different rate of interest, interest shall be allowed at the rate of ten per cent a year . . . ."  See ECF No. 52-1, PageID # 555.  Defendants' argument is premised on the assumption that there was no rate of interest fixed in the agreement governing Aldaya's loan.  Without knowing the facts of this case, the court cannot determine whether Aldaya's credit card agreement with HSBC provided for interest at a particular rate.  Nor can this court determine that charging off any interest nullified any contractual rate and authorized prejudgment interest under section 478-2, or whether Defendants properly calculated any interest.

The court notes that the debt amounts in Aldaya's credit report suggest that the interest rate imposed on Aldaya's debt may have fluctuated. *See* ECF No. 33-6, PageID #s 327-29. Defendants argue that allegations concerning a fluctuating interest rate are implausible and therefore should be disregarded. They say, "Plaintiff cannot contend both that Midland was applying a rate of 10% **and** that the rate varied, changed or was inconsistent." ECF No. 69, PageID # 902. But it is not at all clear that Aldaya has pled inconsistent facts. This court cannot tell whether Midland charged a 10% rate sometimes, but a lesser rate at other times. Even if the allegations in the First Amended Complaint can be read as saying that Midland charged both an interest rate of 10% and varying rates, Aldaya is allowed to plead inconsistent claims. See Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

Defendants also seek judgment on the pleadings with respect to Aldaya's claim that, when HSBC charged off her debt, it waived any right to collect interest. *See* ECF No. 52-1, PageID # 554-55, 560-61; ECF No. 33 ¶ 26, PageID # 274. Defendants say that this allegation "is based on mistaken factual assumptions and misstatement of the law." *Id.*, PageID # 561. Defendants say that they could not be said to have "waived" any right to collect interest based on a charge off because, as

14

alleged in Paragraph 107 of the First Amended Complaint, the charge off occurred pursuant to federal banking regulations requiring the charge off when Aldaya's debt was 180 days overdue. Defendants contend that a waiver is a voluntary or intentional relinquishment of a known right, and no waiver occurs when an act is required.

This argument is better made in a motion that places before this court the actual legal effect of a charge off. Even if a charge off was required, the effect of the charge off may not be automatically assumed. HSBC may, for example, have intended for no further interest to be added to charged off accounts. Although Defendants characterize the allegations of the First Amended Complaint as being "based on mistaken factual assumptions," this court cannot tell from the allegations whether HSBC intended to cease and ceased collecting interest on Aldaya's delinquent credit card debt. Nor can this court tell what rights Midland Funding acquired when it purchased Aldaya's charged off debt.

Defendants rely on *Bunce v. Portfolio Recovery Associates, LLC*, 2014 WL 5849252, at *6 (D. Kan. Nov. 12, 2014), for the proposition that, as a matter of law, there is no waiver whenever there is a charge off. That case is not persuasive here. In *Bunce*, the plaintiff alleged that an original lender had waived interest after charging off the debt and then sold the

debt to a debt collector, who sought an amount greater than the charged off amount. *Id.* at *1. The district court dismissed the FDCPA claim, which was premised on the theory that the original lender had impliedly waived the right to collect interest. Under applicable Kansas law, an implied waiver occurred when there was some manifestation in an "unequivocal manner by some distinct act or by inaction inconsistent with an intention to claim forfeiture of a right." *Id. at *1.* Because the plaintiff had not alleged that the original lender had explicitly or formally meant to waive its right to collect interest when it charged off the debt, the district court determined that the factual allegations did not plausibly allege that the original lender had waived the right to collect interest simply by charging off the debt. *Id.* at *2. Recognizing that charging off delinquent accounts is a federal regulatory requirement, the district court concluded that the charge off had not been voluntary. *Id.*

Unlike in *Bunce*, the allegations of Aldaya's First Amended Complaint go beyond simply concluding that HSBC must have waived interest after charging off Aldaya's loan. Instead, the First Amended Complaint specifically alleges that, "as a standard practice, and for a variety of sound business reasons (e.g. tax purposes), HSBC waive[d] interest on credit card debts after charge-off for as long as it [held] the debt." ECF No. 33 ¶ 115, PageID # 295. According to Aldaya, because HSBC waived the right

to add interest after the charge off, no Midland entity could charge interest. *Id.* ¶ 116. The allegations of "standard practice" and "business reasons" raise at least a suggestion of an intentional waiver of interest, distinguishing *Bunce* from this case.

Citing *Frost v. Resurgent Capital Services*, 2016 WL 3479087 (N.D. Cal. June 27, 2016), Defendants contend that Aldaya's allegations regarding any business practices following charge off are insufficiently pled. In *Frost*, the debtor owed General Electric $547.96 as of September 25, 2012. At some unknown time before January 14, 2015, General Electric allegedly charged off the debt and sold it to a debt collector. There was no dispute that, on the day the debt collector first sought to collect the debt, January 14, 2015, the debt amount was $547.96. The court concluded that the debt collector had a statutory right under California law to collect interest, supporting the debt collector's claim for $604.01. *Id.* at *3. In examining whether General Electric had waived its right to collect interest, the court in *Frost* noted that a waiver could result from an express agreement or be inferred from unequivocal acts of conduct demonstrating an intent to waive. *Id.* *Frost* determined that the bare allegation that the right to collect interest had been waived given General Electric's business practice not to collect

interest after charge off was insufficient to plausibly allege waiver.  *Id.*

Aldaya's allegations concerning waiver are distinguishable from those in <u>Frost</u>.  In *Frost*, the debt amount as of the sale of the debt was not in dispute, while the debt at issue in this case appears to be in question.  Aldaya's First Amended Complaint alleges that "HSBC charged off the alleged debt in March 2011 in the amount of either $546 or $600, and this was the amount of the alleged debt sold by HSBC."  ECF No. 33 ¶ 109, PageID # 294.  When Midland purchased the debt, likely around August 2013 (as that was the time any Midland debt was first reported to Equifax), that amount had somehow ballooned to $1,304.  Accepting as true the facts alleged by Aldaya, this court cannot agree with Defendants that HSBC, which allegedly froze the debt in the amount of either $546 or $600 for, among other things, "sound business reasons" such as tax considerations, did not waive interest.

Accordingly, to the extent Defendants seek judgment on the pleadings with respect to claims arising out of any charge off, the motion is denied.

**B.   Fees.**

Defendants say the allegations concerning their alleged improper assignment of fees should be dismissed.  Paragraph 159 alleges that "Defendants did not have authority to impose

additional fees on the originating account."  Paragraph 164
similarly alleges, "Defendants' collection of additional fees are
collection attempts for amounts not expressly authorized by
agreement."  Paragraphs 170 and 171 also allege that Defendants
lacked authority to impose additional fees.

The court disagrees that the First Amended Complaint's
references to fees are based on naked assertions of fact.  Aldaya
alleges that the amount of debt sold by HSBC to Midland was $546
or $600.  ECF No. 33 ¶ 109, PageID # 294.  When Midland purchased
the debt, that amount had become $1,304.  ECF No. 33-6, PageID
# 329.  Without knowing what interest rate was charged by any
Midland entity, Aldaya is reasonably inferring that fees may have
been added.  To the extent Defendants seek judgment on the
pleadings with respect to claims arising out of the alleged
charging of fees, the motion is denied.

### C.   Differing Names.

Aldaya claims that, although Midland Funding was
identified as owning her debt, Midland Credit Management
confusingly attempted to collect the debt using Midland Credit
Management's address.  Aldaya says that this violated section
443B-18(4), which prohibits the "failure to disclose clearly the
name and full business address of the person to whom the claim
has been assigned for collection or to whom the claim is owed at
the time of making any demand for money."  She also says that

this violated 15 U.S.C. § 1692e(14), which prohibits the "use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization."

Citing Paragraph 95 in the original Complaint, *see* ECF No. 52-1, PageID # 569, Defendants say that Midland Credit Management is the servicer for Midland Funding and that section 443B-18(4) and § 1692e(14) were therefore not violated. It is not at all clear that this court may rely on allegations in the original Complaint when evaluating the sufficiency of the First Amended Complaint, especially when, as here, the allegations are missing from the amended complaint. *See Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) ("As a general rule, when a plaintiff files an amended complaint, the amended complaint supercedes the original, the latter being treated thereafter as non-existent." (quotation marks and alterations omitted)). In any event, Defendants denied the allegations set forth in Paragraph 95 in the Answer to the original Complaint. See ECF No. 15, PageID # 103. Under these circumstances, this court will not assume or take judicial notice of the truth of the allegations set forth in Paragraph 95 of the original Complaint to evaluate whether the First Amended Complaint's allegations are sufficient to state a viable claim.

Based solely on the allegations in the First Amended Complaint, and construing those allegations in the light most

favorable to Aldaya, this court views Aldaya as contending that
she received letters indicating that the current owner of her
debt was Midland Funding, but that Midland Credit Management was
attempting to collect the debt.  It may well be that Aldaya was
told at some point that Midland Credit Management was the
servicer for debts owned by Midland Funding, but that is not
clear from the allegations in the First Amended Complaint.
Accordingly, to the extent Defendants seek judgment on the
pleadings with respect to claims based on the use of differing
business entities' names, the motion is denied.

### D.  Original Account Number.

Aldaya asserts that Defendants violated 15 U.S.C.
§ 1692e(10), which prohibits the "use of any false representation
or deceptive means to collect or attempt to collect any debt," by
"assigning Ms. Aldaya an account number not related to her
original account number."  ECF No. 33 ¶ 134(e), PageID # 300.
For example, a letter dated January 29, 2015, listed a Midland
Credit Management account number of 8538045269, while also noting
that Aldaya's original creditor was HSBC Bank Nevada, N.A, with
the original HSBC account number noted but redacted in the
filings in this case.  *See* ECF No. 32-3, PageID 316 (Jan. 29,
2015, letter); ECF No. 33-3, PageID # 318 (March 12, 2015,
letter); ECF No. 33-4, PageID # 320 (Apr. 27, 2015, letter); ECF
No. 33-1 (May 15, 2015, letter); ECF No. 33-5, PageID # 322 (June

19, 2015, letter).  Aldaya alleges that she was confused by these letters "as to what money she owe[d] on the account and to whom." ECF No. 33 ¶ 138, PageID # 300.

At the hearing on the present motion, Aldaya clarified that she is not relying on any redaction of her original account number.  She clarified that the original documents contained her full account number and that the redactions in the record in this case were made by her attorneys for purposes of filing materials in the public record.

The First Amended Complaint does not allege that the letter dated January 29, 2015, which is attached to the First Amended Complaint, was the first communication Aldaya received from Midland Credit Management.  That letter clearly states that the original creditor was HSBC Bank Nevada, N.A., and lists the original account number (redacted for this court's files such that only the last four digits are visible).  *See* ECF No. 33-2, PageID # 316.  The next two letters in time similarly showed Aldaya's original creditor and account number.  *See* ECF No. 33-3, PageID # 318 (March 12, 2015, letter); ECF No. 33-4, PageID # 320 (Apr. 27, 2015, letter).  The fourth letter Aldaya received, although listing the original creditor at the top of the letter, included the original account number in a smaller font at the bottom of the first page of the letter.  *See* ECF No. 33-1 (May 15, 2015, letter).  Finally, the fifth letter included with the

First Amended Complaint again highlighted the original creditor and account number at the top of the page. *See* ECF No. 33-5, PageID # 322 (June 19, 2015, letter).

Even viewing the letters with the eyes of the least sophisticated debtor, this court cannot see how the letters to Aldaya were false, deceptive, or in any way misleading with respect to account numbers. As a matter of law, no reasonable juror could determine that Defendants used false or deceptive means in assigning their own number to her account while also stating in the same communications the original creditor and original account number. Although the fourth letter listed the account number in a smaller font at the bottom of the letter, when viewed in the context of the multiple communications already sent to Aldaya, that letter would not allow a reasonable juror to determine that § 1692e(10) was violated. Accordingly, the court grants judgment on the pleadings in favor of Defendants on any claim relating to this inclusion of Midland Credit Management's account number in addition to Aldaya's HSBC account number.

### E. Failure to Pay General Excise Tax.

In the "Seventh Violation of the Hawaii Revised Statutes," Aldaya asserts a claim under section 480-2 of Hawaii Revised Statutes. She alleges two factual bases for the claim.

First, she alleges that collection agencies must be registered with the Department of Commerce and Consumer Affairs.

ECF No. 33 ¶ 180, PageID # 308.  She does not, however, allege
that either Midland Funding or Midland Credit Management failed
to register as debt collectors with the Hawaii Department of
Commerce and Consumer Affairs.  In fact, at the hearing on the
present motion, Aldaya stated that she is not asserting any claim
based on the failure by either Midland company to register as a
debt collector in Hawaii, conceding that both had so registered.
Instead, Aldaya says that neither Midland company had a general
excise tax license and therefore must not have paid any taxes on
money collected from Hawaii residents.  *Id.* ¶ 182-83, PageID #s
308-09.  Aldaya claims that this provides them with an unfair
competitive advantage.  She says that she suffered actual damages
in the form of postage, mileage, and emotional distress as a
result of the violation.  *Id.* ¶ 187, PageID # 309.

Second, Aldaya alleges that she mailed letters
requesting validation of the alleged debt and disputing the debt.
She says that her requests were ignored and collection efforts
continued. *Id.* ¶ 185, PageID # 309.  She says that she suffered
actual damages in the form of postage, mileage, and emotional
distress as a result of the violation.  *Id.* ¶ 187.

Defendants seek judgment on the pleadings with respect
to the first section 480-2 claim based on the failure to pay
general excise taxes, arguing that Aldaya lacks standing to bring
such a claim.  After this court expressed doubt at the hearing

24

that Aldaya had standing to assert the claim, Aldaya offered to withdraw the claim. While the court declines to allow such a withdrawal under the circumstances, the court dismisses for lack of standing the claim Aldaya offered to withdraw.

Section 443B-20 makes any violation of Chapter 443B an unfair method of competition and an unfair or deceptive act or practice in the conduct of any trade or commerce for the purpose of section 480-2, which prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. Section 480-13 of Hawaii Revised Statutes provides for damages for violations of section 480-2. Under section 480-13, "any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by this chapter" and "[a]ny consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480-2" may sue for actual damages. Such damages may not include emotional distress damages under section 480-13. *See Zanakis-Po v. Cutter Dodge, Inc.*, 98 Haw. 309, 319, 47 P.3d 1222, 1232 (2002). If the plaintiff is successful, courts are to award the plaintiff three times his or her actual damages or $1,000, whichever is greater. Haw. Rev. Stat. § 480-2.

Defendants initially argue that Aldaya is not a consumer for purposes of section 480-13(b). That argument is

foreclosed by *Flores v. Rawlings Co., LLC*, 117 Haw. 153, 164-65,

177 P.3d 341, 352-53, *opinion amended on reconsideration*, 119

Haw. 287, 196 P.3d 289 (2008):

> By deeming violations of HRS chapter 443B an
> unfair or deceptive act or practice for the
> purposes of HRS § 480-2, it is evident that
> the legislature wished to have chapter 443B
> be enforceable in the same manner as other
> unfair trade practices under chapter 480.  If
> enforcement were limited to individuals who
> had purchased, attempted to purchase, or were
> solicited for purchase of a service or good
> from a collection agency, enforcement of HRS
> chapter 443B would be left entirely in the
> hands of the state.  In view of the expressed
> purpose of HRS chapter 480 to "encourage
> those who have been victimized by persons
> engaging in unfair or deceptive acts or
> practices to prosecute their claim," Hse.
> Stand. Comm. Rep. No. 541, in 1987 House

Journal, at 1355, and the intent of HRS chapter 443B to "protect
creditors from unscrupulous or dishonest collection agencies, and
to protect debtors from abusive collection agencies," this result
would not be in keeping with the statutory structure and would
appear to be the type of "inconsistent," or "absurd," result that
this court must presume the legislature would not have intended.

> Rather, in the context of consumer debt, the
> determination of whether the individual
> seeking suit is a "consumer" should rest on
> whether the underlying transaction which gave
> rise to the obligation was for a good or
> service that is "primarily for personal,
> family, or household purposes," HRS § 480-1.
> This reading is supported by the definition
> of "debt" in HRS § 443B-1, as well as the
> fact that the statutory structure of HRS
> chapter 480 does not require that one be a
> "consumer" of the defendant's goods or
> services, but merely a "consumer." *Cf.
> Flenniken v. Longview Bank and Trust Co.*, 661
> S.W.2d 705, 707 (Tex. 1983) ("Privity between
> the plaintiff and defendant is not a
> consideration in deciding the plaintiff's
> status as a consumer under the [Texas

Deceptive Trade Practices Act]. A plaintiff
establishes his standing as a consumer in
terms of his relationship to a transaction,
not by a contractual relationship with the
defendant. The only requirement is that the
goods or services sought or acquired by the
consumer form the basis of his complaint."
(Citations omitted.)).

Defendants next argue that Aldaya lacks standing
because she lacks an actual injury. *See Hungate v. Law Office of
David B. Rosen,* 2017 WL 747870, at *14 (Haw. Feb. 27, 2017) ("In
addition to adequately alleging sufficient facts that Deutsche
Bank's conduct were unfair or deceptive pursuant to HRS § 480-2,
Hungate was also required to allege sufficient facts to show he
was injured."). With respect to the claim based on an alleged
failure to pay general excise taxes, this court agrees that
Aldaya lacks standing to pursue the claim.

Chapter 480 does not define the term "injury." *Flores*,
117 Haw. at 167, 177 P.3d at 355. Courts interpreting the term
have noted that there is not a "high bar" for proving injury.
*Hungate*, 2017 WL 747870, at *14. In fact, *de minimus* damages are
a sufficient injury to support recovery under section 480-13.
*See Wiginton v. Pac. Credit Corp.*, 2 Haw. App. 435, 444, 634 P.2d
111, 119 (1981) ("the legislature was aware that damages might be
de minimus in a consumer protection action and specifically
provided for the $1,000.00 award or triple damages to cover that
possibility").

In *Flores*, the Hawaii Supreme Court stated: "proof of a
violation of chapter 480 is an essential element of an action
under Sec. 480-13, the mere existence of a violation is not
sufficient ipso facto to support the action; forbidden acts
cannot be relevant unless they cause private damage." *Id.* The
court further noted that a plaintiff sufficiently alleges an
injury for standing purposes by alleging that he or she was made
to pay money that was "wrongfully induced." *Id.* at 169, 177 P.3d
at 357. In *Hungate*, the Hawaii Supreme Court explained that a
plaintiff need only allege that the plaintiff has sustained
special and general damages "as a direct and proximate result" of
the 480-2 violation. *Hungate*, 2017 WL 747870, at *14.

In *Flores*, the Hawaii Supreme Court determined that the
defendant was a collection agency required to register under
section 443B-3 of Hawaii Revised Statutes. *Id.* at 161, 177 P.3d
at 349. Although the debt collector violated chapter 443B by
failing to register, the Hawaii Supreme court ruled that the
failure did not injure a plaintiff who had paid the debt
collector:

> the provision at issue here does not bear on
> the validity of the underlying obligation and
> involved no illegal representations by
> Rawlings such that payment on the obligation
> would have caused Plaintiffs to incur private
> damage. Rather, Plaintiffs had a valid loan
> agreement with HMSA, which was settled
> through Rawlings. Although Rawlings's
> activities in collecting money were in

28

> violation of HRS chapter 443B, the collection
> cannot be said to have "injured" Plaintiffs.

*Id.* at 169, 177 P.3d at 357. If a debt collector cannot be said to injure a debtor who pays a debt when the debt collector fails to register as a debt collector, Defendants cannot be said to have injured Aldaya through a failure to submit general excise taxes to Hawaii, even assuming that they were required to pay such taxes. In other words, Aldaya has failed to allege any actionable injury caused by Defendants' alleged failure to pay taxes to Hawaii.

**IV.      CONCLUSION.**

Defendants' motion for judgment on the pleadings is denied in significant part. The court grants the motion in only two respects. First, the court grants the motion to the extent Aldaya asserts claims based on any alleged confusion resulting from the reference in collection letters to her original account number as well as to a Midland account number. Second, the court grants the motion insofar as it argues that Aldaya lacks standing to assert a section 480-2 claim based on Defendants' alleged failure to pay Hawaii general excise taxes.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 20, 2017.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Aldaya v. Encore Capital Group, Inc., et al., Civ. No. 15-00284 SOM/RLP;
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON
THE PLEADINGS